1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                  FOR THE DISTRICT OF OREGON

11                      PORTLAND DIVISION

12  BILLY RICHARDSON,              )
                                   )
13              Plaintiff,         )
                                   )        No.  CV-08-6082-HU
14       v.                        )
                                   )
15  COUNTY OF LINN, OR, STATE OF   )
    OREGON,                        )        FINDINGS & RECOMMENDATION
16                                 )
                Defendants.        )
17  _____)

18
    Billy Richardson
19  6605575
    Santiam Correctional Institution
20  4005 Aumsville Highway SE
    Salem, Oregon 97317
21
         Plaintiff Pro Se
22
    Starla J. Goff
23  SMITH FREED EBERHARD PC
    111 S.W. Fifth Avenue, Suite 4300
24  Portland, Oregon 97204

25       Attorney for Defendant Linn County

26  HUBEL, Magistrate Judge:

27       Pro se plaintiff Billy Richardson brings this 42 U.S.C. § 1983

28  action against defendant Linn County, alleging a violation of his

1 - FINDINGS & RECOMMENDATION

First Amendment rights.[1]  Both parties move for summary judgment.
For the reasons explained below, I recommend that plaintiff's
motion be granted in part and denied in part, and that defendant's
motion be granted in part and denied in part.

BACKGROUND

On May 25, 2007, plaintiff was arraigned in Linn County on
criminal charges.  At the time, attorney David Delsman was
appointed counsel for plaintiff.  Plaintiff was incarcerated at the
Linn County Jail.  Delsman remained plaintiff's counsel in
connection with the criminal charges until approximately August 21,
2007, a few days before plaintiff's release from the Linn County
Jail on August 24, 2007.

On September 26, 2007, William L. Ghiorso began representing
plaintiff on the criminal charges.  On January 22, 2008, Ghiorso
withdrew as counsel.  Plaintiff returned to the Linn County Jail on
February 1, 2008, and Kirk Tibbetts was appointed as plaintiff's
counsel on that date.  On February 28, 2008, Janet Boytano was
substituted for Tibbetts and was appointed to represent plaintiff.

During his initial incarceration at the Linn County Jail, from
May 25, 2007, until August 24, 2007, plaintiff was in contact with
Jeffrey Sharp, whom plaintiff describes as a "non-attorney who for
personal reasons has taken an interest in the legal plight of the
indigent 'actually innocent.'"  Pltf's CSF at ¶ 9.  Plaintiff's
undisputed description of Sharp's work is that Sharp "does not
charge for services nor claim special legal skills but will do

_____

[1]  Plaintiff named the State of Oregon in his original
Complaint, but dropped the State in his Second Amended Complaint
filed June 16, 2008.

2 - FINDINGS & RECOMMENDATION

'legwork' investigations in the local underworld then provide such information to attorneys."   Id.

Plaintiff met with Sharp in early July 2007 and requested that Sharp contact potential defense witnesses listed by plaintiff and obtain statements from them.  He contends that Delsman, his court-appointed attorney at the time, had not done this.  Plaintiff and Sharp also discussed plaintiff's rights to pre-trial discovery and to effective attorney representation.   According to plaintiff, because Sharp was not an attorney, Sharp planned to send plaintiff copies of "authoritative caselaw" on these issues.

Following the meeting, Sharp obtained sworn statements from most of the witnesses named by plaintiff.  Plaintiff states that these affidavits were filed with the court, and sent to Delsman and the State.  Copies were also sent to plaintiff in the Linn County Jail.  Sharp also mailed Delsman and plaintiff copies of cases, and "other court filings" that plaintiff states may have been helpful to his case.

These mailings from Sharp to plaintiff while he was incarcerated in the Linn County Jail were confiscated by jail staff and returned to Sharp.  Some were returned because they related to the alleged victim in plaintiff's criminal case and violated the jail's policy prohibiting delivery of mail related to a victim or a victim's family.   Other documents were returned based on defendant's policy that legal-related mail must be sent by the inmate's counsel.

Towards the end of August, about one week after Delsman was no longer representing plaintiff, Delsman supplied the jail with the materials that Sharp had sent.   The jail then provided the

3 - FINDINGS & RECOMMENDATION

1  documents to plaintiff.

2      On February 17, 2009, while still incarcerated at the Linn

3  County Jail, plaintiff requested the services of a free notary.

4  Exh. 2 to Tim Mueller Declr. at p. 1.  The request was denied,

5  although plaintiff was told that he could have a notary come into

6  the jail "pretty much anytime."  Id.  Mueller, the Linn County

7  Sheriff, states that on the date plaintiff requested the free

8  notary, plaintiff had funds to pay for the service.  Mueller Declr.

9  at ¶ 4.  Plaintiff's commissary report from the jail shows what

10  appears to be a $220 deposit on February 9, 2009, and a positive

11  balance remaining as of February 17, 2009. Id. at p. 2.

12      Finally, plaintiff agrees that he did not request access to a

13  law library during a time that he was unrepresented by counsel.

14                              STANDARDS

15      Summary judgment is appropriate if there is no genuine issue

16  of material fact and the moving party is entitled to judgment as a

17  matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the

18  initial responsibility of informing the court of the basis of its

19  motion, and identifying those portions of "'pleadings, depositions,

20  answers to interrogatories, and admissions on file, together with

21  the affidavits, if any,' which it believes demonstrate the absence

22  of a genuine issue of material fact."  Celotex Corp. v. Catrett,

23  477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

24      "If the moving party meets its initial burden of showing 'the

25  absence of a material and triable issue of fact,' 'the burden then

26  moves to the opposing party, who must present significant probative

27  evidence tending to support its claim or defense.'"  Intel Corp. v.

28  Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991)

4 - FINDINGS & RECOMMENDATION

1   (quoting <u>Richards v. Neilsen Freight Lines</u>, 810 F.2d 898, 902 (9th
2   Cir. 1987)).  The nonmoving party must go beyond the pleadings and
3   designate facts showing an issue for trial.  <u>Celotex</u>, 477 U.S. at
4   322-23.

5        The substantive law governing a claim determines whether a
6   fact is material.  <u>T.W. Elec. Serv. v. Pacific Elec. Contractors
7   Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as
8   to the existence of a genuine issue of fact must be resolved
9   against the moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith
10  Radio</u>, 475 U.S. 574, 587 (1986).  The court should view inferences
11  drawn from the facts in the light most favorable to the nonmoving
12  party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.

13       If the factual context makes the nonmoving party's claim as to
14  the existence of a material issue of fact implausible, that party
15  must come forward with more persuasive evidence to support his
16  claim than would otherwise be necessary.  <u>Id.</u>; <u>In re Agricultural
17  Research and Tech. Group</u>, 916 F.2d 528, 534 (9th Cir. 1990);
18  <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics,
19  Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).

20                              DISCUSSION

21       Plaintiff's Second Amended Complaint raises four causes of
22  action: (1) defendant violated his First Amendment rights when it
23  confiscated the mailings from Sharp to plaintiff and returned them
24  to Sharp; (2) defendant violated his First Amendment right to
25  access the courts when it failed to provide free postage for legal
26  mailings to an indigent inmate; (3) defendant violated plaintiff's
27  First Amendment right to access the courts when it failed to
28  provide him access to a law library, including during a period when

5 - FINDINGS & RECOMMENDATION

1   he was "pro se"; and (4) defendant violated his First Amendment

2   right to access the courts when it failed to provide a free notary

3   to an indigent inmate.  Sec. Am. Compl. at pp. 8-9.  Plaintiff

4   seeks injunctive relief and damages, as well as attorney's fees and

5   costs.  Id. at pp. 9-10.

6      In a Supplemental Complaint filed July 1, 2009, plaintiff

7   withdraws his claims for injunctive relief and reiterates, without

8   apparently adding any new claims, that he continues to assert that

9   the jail's "mail rules" resulted in delays in the legal process

10   adding unnecessary, additional time in jail.  Supp'l Compl. at pp.

11   1-2.

12      Initially, I recommend that defendant's motion as to the

13   claims regarding the law library, the free notary, and the postage

14   for legal mail, be granted and that plaintiff's motion as to these

15   claims, be denied.  In response to defendant's Concise Statement of

16   Facts, plaintiff admits that at no time did he request access to a

17   law library when he was pro se and unrepresented by counsel.

18   Because the only time plaintiff was denied law library access was

19   when he had an attorney, he has no cognizable claim for violation

20   of his constitutional right to access the courts.  See United

21   States v. Wilson, 690 F.2d 1267, 1272 (9th Cir. 1982) (the offer of

22   court-appointed counsel satisfies the constitutional obligation to

23   provide meaningful access to the courts, even where detainee is

24   denied pretrial access to a law library); see also Lewis v. Casey,

25   518 U.S. 343, 350-51, (1996) (prisoners have no per se right to a

26   law library).

27      As to the notary, the record shows, and plaintiff fails to

28   dispute, that he had funds in his commissary account at the time he

6 - FINDINGS & RECOMMENDATION

1    requested a free notary, and that he was told he could bring a

2    notary in at any time.   Thus, the factual basis for plaintiff's

3    claim that he was denied a notary when he was indigent, is not

4    supported by the record.

5         Additionally, plaintiff fails to establish, or create a

6    genuine issue of material fact regarding, an actual injury as a

7    result of defendant's denial of his free notary request.   See

8    Casey, 518 U.S. at 349-51 (claim of denial of access to the courts

9    must allege an actual injury); Barren v. Harrington, 152 F.3d 1193,

10   1195 (9th Cir. 1998) (to state a claim for denial of access to the

11   courts, plaintiff must allege an actual injury).   Actual injury

12   means "actual prejudice with respect to contemplated or existing

13   litigation, such as the inability to meet a filing deadline or

14   present a claim."   Casey, 518 U.S. at 348 (internal quotation

15   omitted).   Here, plaintiff presents no evidence of any actual

16   injury caused by defendant's failure to provide a free notary.

17        As to the claim that defendant violated his right of access to

18   the courts by not providing free postage for legal mailings to an

19   indigent inmate, defendant asserts that there is no evidence that

20   such postage was denied to plaintiff while he was indigent.   In

21   response, plaintiff fails to submit any evidence of defendant's

22   rejection of postage for legal mail at any time, whether he was

23   indigent or not.   Additionally, as with the notary, he fails to

24   establish any kind of actual injury.

25        The remaining claim requires more discussion.   Plaintiff

26   argues that defendant's failure to deliver the "legally important

27   mail" sent to him by Sharp violated his First Amendment rights.   It

28   is unclear if plaintiff views defendant's conduct as a violation of

7 - FINDINGS & RECOMMENDATION

1   his right of access to the courts, or his right to free expression.
2   Because plaintiff considers the documents sent to him by Sharp to
3   be "legally important" material, he suggests that his claim is
4   based on his constitutional right to access the courts.

5       However, in his materials filed in opposition to defendant's
6   motion, and filed in support of his own motion, plaintiff refers to
7   the First Amendment rights of Sharp, the sender of the material.
8   This suggests that a more general right of free expression is at
9   issue.  While plaintiff may not assert a claim based on a violation
10  of Sharp's First Amendment rights, plaintiff may nonetheless bring
11  a free expression claim on his own behalf related to receiving
12  mail.

13      Ordinarily, "a plaintiff may only bring a claim on his own
14  behalf, and may not raise claims based on the rights of another
15  party."  Pony v. County of Los Angeles, 433 F.3d 1138, 1146 (9th
16  Cir. 2006) (discussing standing requirements).  However, as the
17  Ninth Circuit noted in Morrsion v. Hall, 261 F.3d 896, 906 (9th
18  Cir. 2001), the "Supreme Court has repeatedly recognized that
19  restrictions on the delivery of mail burden an inmate's ability to
20  exercise his or her First Amendment rights." (citing Procunier v.
21  Martinez, 416 U.S. 396 (1974), Thornburgh v. Abbott, 490 U.S. 401
22  (1989)).  Thus, I consider the claim as implicating plaintiff's
23  free expression rights as well as his right to access the courts.

24      To the extent plaintiff argues that defendant violated his
25  right of access to the courts, he fails to establish his claim, or
26  create an issue of material fact precluding the entry of summary
27  judgment to defendant on this claim.  First, as noted above, he was
28  represented by court-appointed counsel (to whom Sharp also sent the

8 - FINDINGS & RECOMMENDATION

1    documents) at the time, which is sufficient to provide plaintiff

2    access to the courts.[2]

3        Second, he fails to show an actual injury.  In his

4    Supplemental Complaint, plaintiff contends that the jail's mail

5    rules in effect in the summer of 2007 resulted in "delays in the

6    legal process and an innocent man spending additional time in

7    jail[.]"  Supp'l Compl. at p. 2.  In the summary judgment

8    materials, however, plaintiff provides no evidence to support this

9    allegation.  The record shows that plaintiff and Sharp initially

10   met in early July 2007.  Sharp attempted to send the materials to

11   plaintiff starting in mid- to late July through mid-August 2007.

12   Exhs 1 to Mueller Declr. at pp. 1-6 (mail violation reports dated

13   July 24, 2007, July 25, 2007, August 1, 2007, August 10, 2007,

14   August 17, 2007, and August 19, 2007).  Plaintiff then received the

15   materials himself in late August, after Delsman provided them to

16   the jail, and the jail provided them to plaintiff.

17       Plaintiff provides no evidence of any actual injury occurring

18   because of, at most, an approximate six-week delay in obtaining the

19   documents Sharp attempted to mail him directly in July and August.

20   Thus, his claim fails to the extent he alleges that the

21   confiscation of the documents Sharp mailed to him violate his right

22

23

24       [2]   To the extent plaintiff suggests that Delsman's refusal
     to work with Sharp or to use Sharp's investigative research
25   materials rendered Delsman ineffective, such a claim must be
     raised in the state criminal proceedings, or in a collateral
26   attack on any conviction resulting from the alleged ineffective
     assistance of counsel, but not in a civil rights complaint in
27   federal court.  See Younger v. Harris, 401 U.S. 37, 44-46 (1971)
     (discussing longstanding public policy against federal court
28   interference with state court proceedings).

9 - FINDINGS & RECOMMENDATION

1  of access to the courts.

2      To the extent plaintiff contends that defendant's conduct
3  violates plaintiff's right to free expression, the jail's mail
4  rules are governed by the analysis set forth in <u>Turner v. Safley</u>,
5  482 U.S. 78, 89 (1987), which provides that "when a prison
6  regulation impinges on inmates' constitutional rights, the
7  regulation is valid if it is reasonably related to legitimate
8  penological interest." Specifically, the analysis sets forth four
9  factors to consider: (1) the presence of a "valid, rational
10  connection between the prison regulation and the legitimate
11  governmental interest put forward to justify it"; (2) whether there
12  are alternative avenues that remain open to the inmates to exercise
13  the right; (3) the impact that accommodating the asserted right
14  will have on other guards and prisoners, and on the allocation of
15  prison resources; and (4) whether the existence of easy and obvious
16  alternatives indicates that the regulation is an exaggerated
17  response by prison officials.  <u>Id.</u> at 90 (internal quotation
18  omitted); <u>see also</u> <u>Thornburgh</u>, 490 U.S. at 414-19 (applying <u>Turner</u>
19  analysis to claim challenging rule prohibiting receipt of
20  subscription publications by federal prisoners).

21      Defendant asserts that as to the documents which referred to
22  plaintiff's victim, the jail has a legitimate penological interest
23  in protecting victims and their families from harm and/or unwanted
24  communications.  The documents themselves are not in the record.
25  In his undisputed Concise Statement of Facts, plaintiff generally
26  describes the documents as sworn affidavits from witnesses, caselaw
27  authority, and other court filings.  Pltf's CSF at ¶¶ 15, 16; <u>see</u>
28  <u>also</u> Pltf's Declr. at pp. 2-3 (same).  The mail violation report

10 - FINDINGS & RECOMMENDATION

1  forms indicate that the mail mentioned the victim's name, contained
2  a picture of the victim, or were considered other documents "from
3  or concerning victim." Exh. 1 to Mueller Declr. at pp. 1, 2, 3, 5,
4  6.

5      Although Sharp submitted a declaration indicating that the
6  photo he mailed was not of plaintiff's victim, but was of Sharp's
7  ex-wife, there is no dispute that at the time the mail was
8  rejected, the jail believed the photo was of plaintiff's victim.
9  Additionally, while Sharp describes the other documents concerning
10 plaintiff's victim as official documents obtained from the victim's
11 own criminal files at Linn County Circuit Court, he does not deny
12 that these documents did relate to plaintiff's victim.

13     Courts have frequently found that protecting a criminal
14 defendant's victims from harassment is a legitimate penological
15 goal. E.g., Samford v. Drekte, 562 F.3d 674, 680 (5th Cir. 2009)
16 (prisons have legitimate interest in protecting crime victims and
17 their families from unwanted communications from prisoners); see
18 also Tompkins v. Department of Corrections, No. 1:08CV322-01-MU,
19 2009 WL 995573, at *1 (W.D.N.C. Apr. 14, 2009) (prison had
20 legitimate penological interest in protecting the public from
21 harassment by inmates by prohibiting an inmate from sending letters
22 to persons who indicate in writing that they do not wish to receive
23 mail from a particular inmate).

24     While most cases address policies governing outgoing mail, the
25 penological interest remains even when the regulation concerns
26 incoming mail. See, e.g., Barhite v. Caruso, No. 1:08-cv-1138, 2009
27 WL 440682, at *3 (W.D. Mich. Feb. 23, 2009) (confiscation of photos
28 from inmate which may have been brought to prison by inmate or

11 - FINDINGS & RECOMMENDATION

1  mailed to him once incarcerated, was reasonably related to
2  legitimate penological interest of prison in protecting victims
3  when inmate had been convicted of criminal sexual conduct and
4  refused to state that the photos were not of his victims).

5      Here, plaintiff was charged with kidnaping, raping, and
6  assaulting his victim.  Exh. 1 to Goff Declr. at pp. 2-3.
7  Defendant had a legitimate penological interest in restricting
8  information about the victim, or what it thought were photos of the
9  victim, from plaintiff because such information could in turn cause
10 harassment or harm to the victim by plaintiff.  Additionally,
11 because the documents in this case were confiscated only when
12 plaintiff was represented by counsel, alternative avenues existed
13 for plaintiff to obtain the material from his lawyer.[3]  While there
14 would be little impact on guards, other inmates, or prison
15 resources to accommodate the asserted right, this is only one
16 factor to consider.  Finally, here, the easy and obvious
17 alternative of allowing the inmate's counsel to provide the inmate
18 with the victim-related material does not expose the regulation as
19 an exaggerated response by prison officials but rather, assures
20 that the victim-related material relates to the inmate's legal
21 proceedings which then fosters the legitimate use of the material
22 and stems any use which is harassing to the victim.

23     Defendant also argues that as all of the documents were
24 "legally important" according to plaintiff, defendant has

25

26     [3]  Given the fact that defendant confiscated the material
   only when plaintiff had court-appointed counsel, I do not
27 consider whether the rule prohibiting incoming mail concerning
   the inmate's victim is valid when the inmate is not represented
28 by counsel.

12 - FINDINGS & RECOMMENDATION

1   legitimate penological interests in insuring that inmates who are
2   represented by counsel correspond directly with their counsel to
3   assist in their defense so as to maintain relationships between
4   inmates and their counsel.  Defendant cites to no case recognizing
5   such an interest by a prison.  The only authority cited by
6   defendant is Guajardo v. Estelle, 580 F.2d 748 (5th Cir. 1978), a
7   case in which, according to defendant, the court prohibited
8   prisoners from receiving legal materials from outsiders other than
9   publishers or publication suppliers where suitable alternatives are
10  available.

11      Defendant's description of the holding in the case is
12  misleading and exaggerated.[4]  The Guajardo court addressed several
13  regulations regarding inmate mail, one of which was a rule
14  permitting the prison to inspect mail to and from an inmate's
15  attorney for the presence of contraband and to determine that the
16  incoming correspondence was from a licensed attorney.  Id. at 757.
17  The Fifth Circuit held that there was no "justification whatsoever"
18  for opening or reading correspondence addressed by the inmate to
19  courts, prosecuting attorneys, parole or probation officers, and
20  identifiable attorneys.  Id. at 758.  It noted that the content of
21  outgoing mail to such persons could not, "except on the most
22  speculative theory," damage the security interests of jail
23  administration.  Id.  As to incoming mail from an attorney, the
24  court approved of the part of the rule allowing such mail to be
25  opened and inspected for contraband in the presence of the inmate.

26

27      [4] Additionally, defendant fails to note that Guajardo was
28  decided before Turner and thus relies on a superseded analysis
    for evaluating the reasonableness of prison regulations.

13 - FINDINGS & RECOMMENDATION

1   Id. at 757.

2       Two other regulations concerned publications. Under the first

3   of these two regulations, the prison censored manuals providing

4   descriptions of the manufacture of weapons, explosives, or drugs,

5   and "publications judicially declared obscene." Id. at 760. These

6   regulations authorized censorship of statements that "'unduly

7   complain' or 'magnify grievances', [as well as the] expression of

8   'inflammatory political, racial, religious or other views,' and

9   matter deemed 'defamatory' or 'otherwise inappropriate.'" Id. at

10  761.

11      The court upheld the rule to the extent that the publication

12  contained information regarding the manufacture of explosives,

13  weapons, or drugs, or that a "reasonable person would construe as

14  written solely for the purchase of communicating information

15  designed to achieve the break down of prisons through inmate

16  disruption such as strikes or riots." Id. The court held the rule

17  invalid to the extent it allowed censorship of publications that

18  "advocate the legitimate use of prison grievance procedures or that

19  urge prisoners to contact public representatives about prison

20  conditions." Id.

21      The second of the two publication-related regulations allowed

22  inmates to receive publications only from a publisher or a

23  publications supplier. Id. at 762. The court upheld the rule

24  because permitting inmates to receive books from friends or

25  relatives created security risks. Id. The court then also noted

26  that in regard to legal material, any infringement on the right of

27  access to the courts was "sufficiently alleviate[d]" by the

28  defendant institution's willingness to include bookstores as

14 - FINDINGS & RECOMMENDATION

1   suppliers of publications and its provision of a prison law
2   library.  Id.

3        The Guajardo court said nothing about a prison's interest in
4   fostering or maintaining the relationship between an inmate and his
5   or her counsel.  It did not, contrary to defendant's assertion,
6   indicate that a prison could lawfully restrict "legal materials"
7   sent by non-publishers.  Its holding was clearly limited to the
8   sending of legal publications such as books and manuals to inmates.
9   The court did not address the sending by non-attorneys of non-
10  publication legal materials.

11       Defendant cites to no other authority in support of its
12  position that it has a legitimate penological interest in
13  maintaining the relationship between an inmate and counsel.  I have
14  found none.  Moreover, I cannot, in the absence of authority,
15  understand what legitimate penological interest a prison would
16  possibly have in fostering the attorney-inmate relationship.
17  Prisons have many legitimate concerns, but whether an inmate has a
18  relationship with a lawyer, or a particular lawyer, is not one of
19  them.  I reject defendant's unsupported assertion that it has a
20  legitimate penological interest in maintaining an inmate's
21  relationship with counsel.  Thus, I need not proceed further with
22  the remaining factors of the Turner analysis.  Defendant's former
23  regulation as to the non-victim-related materials in this case,
24  violated plaintiff's First Amendment free expression rights.

25       Although, to sustain his access to the courts claim, plaintiff
26  has to show actual prejudice to existing or contemplated litigation
27  to establish the particular type of actual harm required by Casey,
28  that actual prejudice is not required for his free expression

15 - FINDINGS & RECOMMENDATION

1  claim.  Plaintiff has sufficiently created an issue of material
2  fact on damages related to this claim by stating in his declaration
3  that he desired the information from Sharp in order to decide
4  whether to accept a plea offer or go to trial, and whether to
5  replace or keep Delsman, Pltf's Declr. at p. 3, and by arguing that
6  he suffered harm from being in "limbo" as a result of this "'black-
7  out' of information" from Sharp.  Nonetheless, plaintiff fails to
8  put forth evidence capable of establishing his requested $20,000 in
9  damages for this claim.  Thus, at this point, I recommend granting
10 plaintiff's motion only as to the liability portion of his free
11 expression First Amendment claim, and only as to the non-victim
12 related documents, and denying his motion as to the damages he
13 seeks on this claim.

14 Finally, defendant moves to strike several statements made by
15 plaintiff in his declaration and made by Sharp in his declaration.
16 I deny the motion to strike as moot as I did not consider or rely
17 on any of the challenged statements in resolving the motions.

18                              CONCLUSION

19 I recommend that defendant's motion for summary judgment (#36)
20 be granted as to all claims except for the portion of the free
21 expression First Amendment claim related to non-victim documents,
22 and that defendant's motion be denied as to all aspects of that
23 claim.  I further recommend that plaintiff's motion for summary
24 judgment (#43) be denied as to all claims, except for the liability
25 portion of his non-victim-related free expression First Amendment
26 claim, and that the motion be denied as to the damages requested on
27 that claim.  Defendant's motion to strike (#50) is denied as moot.
28 / / /

16 - FINDINGS & RECOMMENDATION

1                    SCHEDULING ORDER

2          The Findings and Recommendation will be referred to a district

3    judge.   Objections, if any, are due June 14, 2010.   If no

4    objections are filed, then the Findings and Recommendation will go

5    under advisement on that date.

6          If objections are filed, then a response is due July 1, 2010.

7    When the response is due or filed, whichever date is earlier, the

8    Findings and Recommendation will go under advisement.

9          IT IS SO ORDERED.

10                     Dated this  25th   day of  May        , 2010.

11

12

13                              /s/ Dennis James Hubel
                                 Dennis James Hubel
14                               United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17 - FINDINGS & RECOMMENDATION